## MY MARYLAND LODGE NO. 186 OF MACHINISTS ET AL. *vs.* JOHN B. ADT.

*Injunction Against Combination to Boycott Plaintiff and to Intimidate Persons Dealing With Him—Preliminary Injunction—Affidavit to Bill.*

The right of an individual to carry on his business in such a manner as he sees fit will be protected by an injunction restraining parties from combining to boycott such individual and from distributing circulars threatening those of the public who deal with him with the ill will of organized labor.

Plaintiff is a manufacturer of machinery and supplies for breweries. He refused to comply with a demand for an increase in the wages of his employees and a strike was declared by them. Representatives of certain labor organizations, who are among the defendants in this case, threatened plaintiff that unless he acquiesced in the demands made he would be placed on the unfair list, and they would close his shop and destroy his business. Thereafter defendants placed pickets in the streets near plaintiff's works, and appointed persons to follow his wagons to discover where work was being done by him, and defendants issued circulars requesting the public not to drink the beer of certain brewers, to whom plaintiff furnished supplies, because declared unfair for getting machinery from the unfair firm of the plaintiff. Defendants also in pursuance of their combination and conspiracy to ruin plaintiff's business notified brewers and others who had been accustomed to deal with plaintiff that they would be boycotted if they continued to do so. The bill in this case set forth the above facts and stated that brewers had discontinued their patronage of the plaintiff because of the threats of boycotting made by defendants and that his business in consequence greatly diminished, and asked for an injunction restraining the defendants from such acts of interference. The answers denied the allegations of the bill, though admitting that one of defendants, as an individual but not on behalf of the others, had distributed the circulars. The plaintiff then filed a petition reiterating the allegations of the bill and accompanied it with certain affidavits in support thereof. *Held*, that a preliminary injunction should be issued, and continued until final hearing, restraining the defendants from in any manner interfering with the plaintiff or his employees in his business, or from following his delivery wagons, and from persuading, or compelling by threats, other persons not to deal with plaintiff, and from circulating or from publishing anything tending to injure plaintiff's business, and from boycotting plaintiff or those for whom he may do work.

*Held*, further, that there is sufficient disclosed in the affidavits accompanying the petition, notwithstanding the denials contained in the answer, to justify the continuance of the injunction until final hearing.

*Held*, also, that those defendants who disclaim participating in the acts charged against them have no ground of complaint if they are restrained from doing that which they have not done and do not intend to do.

Upon the hearing of a motion for a preliminary injunction the rules of evidence are applied less strictly than upon the final hearing, and consequently evidence that would not be competent in support of an application for a perpetual injunction may be admitted.

An affidavit in support of a petition for an injunction, made by another than the plaintiff, is sufficient when the affiant states that the matters and things set forth in the petition are within his knowledge and are true as therein stated.

Appeal from the Circuit Court of Baltimore City (DEN-NIS, J.)

The cause was argued before McSHERRY, C. J. FOWLER, BRISCOE, BOYD, PEARCE and SCHMUCKER, JJ.

*Thomas G. Hayes* (with whom were *R. E. Lee* and *Oscar L. Hatton* on the brief), for the appellant.

1. The affidavit to the petition on which the injunction was issued was legally insufficient in its verification. The affiant who was not a party to the cause did not in the affidavit state that he had personal knowledge of the matters and things stated in the petition and to which he swore—"That the matters and things set forth in the foregoing petition are within his knowledge and are true as therein stated, to the best of his knowledge and belief." *Fowble* v. *Kemp*, 92 Md. 630; *Moffatt* v. *Calvert County*, 97 Md. 266; *Bowie* v. *Smith*, 97 Md. 326; 10 *Ency. Pl. & Pr.* 967.

2. The averments of bill show that the appellee had ample and adequate remedy at law, and that no irreparable injury was possible or probable, therefore the tender by the appellants in their answer of a bond as required by Art. 16, sec. 69, ousted the jurisdiction of a Court of equity, and the bill should have been dismissed. *Code*, Art. 16, sec. 69; *Dudley* v. *Hurst*, 67 Md. 44; 18 *A. E. Ency. Law*, 91; *Mogul Steamship Co.* v. *McGregor*, 15 Q. B. D. 476; *Francis* v. *Flynn*, 118 U. S. 385; *Mayer* v. *Journeymen Stonecutters*, 47 N. J. Eq. 519; *Long Shore Printing Co.* v. *Howell*, 25 Or. 527; *Rynolds* v. *Everett*, 144 N. Y. 189; *McCauley* v. *Tierney*, 19 R. I. 250; *Bohn Mfg. Co.* v. *Hollins*, 54 Minn. 223; *McHenry* v. *Jewett*, 90 N. Y. 58.

3. Labor unions are legal bodies of organized labor provided for and sanctioned by the laws of Maryland and the United States, with legal rights to be protected and enforced by the Courts. *Code*, Art. 23, sec. 37; Art. 27, sec. 31; 24 *Statutes at Large*, 86; *Curran* v. *Galen*, 152 N. Y. 33; *Gray* v. *Building Trades Conncil* (Minn.), 97 N. W. Rep. 663; *Thomas* v. *Cincinnati R. Co.*, 62 F. Rep. 817; *Stevedores Assn.* v. *Watsh*,

2 Daly 10; *Perkins* v. *Rogg,* 11 Ohio, Dec. 585; *Hopkins* v. *Oxley Stove Co.,* 49 U. S. App. 709.

4. Free competition, within the limits of the law, is the inalienable right of the citizen, acting separately or in combination; and the means which the law permits to be used in other competitive struggles are available, and may be used in conflicts between labor unions and non-union employers and employees. *Allen* v. *Flood* (1898), App. Cas. 1; *Casey* v. *Cincinnati T. U.,* 45 Fed. Rep. 135; *Walker* v. *Cronin,* 107 Mass. 564; *Rogers* v. *Evarts,* 17 N. Y. Sup. 264; *Hopkins* v. *Oxley Stove Co.,* 49 U. S. App. 709; *Vegilahn* v. *Gunther,* 167 Mass. 92; *Snow* v. *Wheeler,* 113 Mass. 179.

5. The means which union labor may use in its competitive conflict with non-union labor and its employers:

(*a*) Union labor may declare a strike, call out its members, and persuade others not to accept employment or leave the employment, if no contract exists, of the firm or corporation against which the strike has been declared. The use of any of these means must be free from illegal threats, violence, intimidation or coercion. 18 *A. & E. Encyl Law,* 86; *Arthur* v. *Oakes,* 24 U. S. App. 239; *U. S. Kane,* 23 Fed. Rep. 746.

(*b*) Picketing peaceably the factory where the strike has been declared is lawful. 1 *Eddy on Comb.,* sec. 537; *Reynolds* v. *Everett,* 22 N. Y. Sup. 309; 144 N. Y. 189; 18 *A. & E. Encyl. Law,* 86; *Regina* v. *Druett,* 10 C. C. Cases 593; *Richter* v. *Journeymen Tailors,* 24 Wkly. L. Bul't. 189; *Rogers* v. *Evart,* 17 N. Y. Sup. 264.

(*c*) Boycotts under certain conditions, used to accomplish certain lawful ends in the battle of competition are lawful and permissible means, which may be used by labor unions. *State* v. *Glidden,* 55 Conn. 46; 18 *A. & E. Encyl. Law,* 87; *Mogul Steamship Co.* v. *McGregor,* 15 Q. B. D. 476 (1885).

(*d*) A boycott which involves the refusal of union labor and their friends to deal with any non-union firm or corporation, or with their customers, is lawful when the excuse or reason for such a boycott is to aid or help union labor or its employees in its competitive struggle with non-union labor and its em-

ployers. 18 *A. & E. Encyl. Law* 87; *Mogul Steamship Co.* v. *McGragor*, 15 Q. B. D. 476 (1885), 21 Q. B. D. 544 (1888), L. R. App. cases 25 (1892); *Allen* v. *Flood*, L. R. App. cases I (1898); *Walker* v. *Cronin*, 107 Mass. 555; *Carew* v. *Rutherford*, 106 Mass. 1; *Crump* v. *Commonwealth*, 84 Va. 927; *People* v. *Welzig*, 4 N. Y. Crim. Rep. 403; *People* v. *Kostka*, 4 N. Y. Crim. Rep. 429; *McCauley* v. *Tierney*, 19 R. I. 250; *Bohn Mfg. Co.* v. *Hollis*, 54 Minn. 223; *Commonwealth* v. *Hunt*, 4 Met. 111; *Bowen* v. *Matthews*, 14 Allen, 499; *Mayor* v. *Journeyman S. C. Assn.*, 47 N. J. Eq. 519; *Payne* v. *Railroad Co.*, 13 La. 507; *Long Shore P. & P. Co.* v. *Howell*, 26 Or. 527.

(*e*) A threat in law is a declaration or intimation of an intention to injure another by the commission of some unlawful act. If the act intended to be done is not unlawful, then the declaration is not a threat in law, and the effect thereof is not intimidation in a legal sense. 18 *A. & E. Encyl. Law* 84; *Moores* v. *Bricklayers' Union*, 10 Ohio, 665; *McCauley* v. *Tierney*, 19 R. I. 250.

(*f*) The following cases, in which the boycott was illegal are clearly distinguished from the foregoing cases in this: the act done and complained of was done in the interest of union labor or competition, but were acts which were wanton, reckless and malicious. These cases are : *Lucke* v. *The Clothing Cutters and Trimmers Assembly*, 77 Md. 449; *Barr* v. *Essex Trade Council*, 53 N. J. Eq. 101; *Thomas* v. *Cincinnati R. Co.*, 62 Fed. Rep. 817; *Gray* v. *Bldg. Trades Council* (Minn.), 97 N. W. Rep. 663; *Quinn* v. *Leatham*, L. R. 1901, Q. B. D. 76.

*Harry N. Abercrombie* (with whom were *Niles & Wolff* on the brief ), for the appellee.

As was said in *Allis Chalmers Co.* v. *Reliable Lodge, &c.*, 111 Fed. Rep. 264, "In a conspiracy of this character where it is difficult to even learn the names of the individual members of the lodges, the actual co-operation of the individual members in the conspiracy is difficult to establish by direct proofs, but their acquiescence in, and connivance at, the methods pursued

by their officers and leaders is easily established by the *results* sought and accomplished."

Now in this case we have, as a *result of something*, the facts:

(*a*) That plaintiff's business, as to one great and important branch, is utterly ruined by reason of all his old customers ceasing to have dealings with him.

(*b*) That even goods that have been ordered are sent back, and work that has been commenced is ordered stopped.

(*c*) That these customers inform plaintiff that the reason for all this is, not any fault that they have to find either with the goods or the work furnished by plaintiff, but *solely* that a boycott has been declared by organized labor of this city against him, und also against anyone who employs him.

(*d*) That many of these customers (one a customer of twenty-five years standing) are willing to place themselves on record in affidavits to the effect in substance that they do not give the plaintiff work for the *sole reason that they are afraid to*, on account of the effect it would have on their own business.

(*e*) That, when any of his old customers orders a bit of work done by John B. Adt, a boycott circular appears, warning all mankind, or all friends to union labor, to withdraw their patronage from the firm who dares employ John B. Adt; a man declared "unfair by the Baltimore Federation of Labor."

It is too plain for dispute that the *result of something* is the ruin of the plaintiff's business, by reason of his customers being prevented from doing business with him through the fear of incurring the displeasure, persecution, and vengeance of the defendants in this case. If this is not a boycott, what is' it? See *Crump* v. *Commonwealth*, 84 Va. 927.

"No case has been cited where, upon a proper showing of facts, an unsuccessful appeal has been made to a Court of Chancery to restrain a boycott. The authorities are all the other way." *Casey* v. *Cincinnati Typo Union*, 45 Fed. 135. "Boycotts, though unaccompanied by violence or intimidation, have been pronounced unlawful in every State of the United States where the question has arisen, unless it be in Minnesota, and they are held to be unlawful in England."

*Thomas* v. *Cincinnati, &c., R. R. Co.*, 62 Fed. Rep. 803.
They have since been held unlawful in Minnesota. *Ertz*
v. *Produce Exchange*, 79 Minn. 140. See also *Eddy on
Combinations*, 453; *Lucke* v. *Clothing Cutters*, 77 Md. 396.

McSHERRY, C. J., delivered the opinion of the Court.

This case arose upon a bill of complaint filed in the Circuit
Court of Baltimore City by John B. Adt, against My Mary-
land Lodge No. 186, International Association of Machinists;
The Brewers Engineers Union; The Baltimore Federation of
Labor, Liberty Association of Steam Fitters of Baltimore,
Local Branch No. 61 of National Association; Henry F. Voll-
mer, business agent, Fred. Heuer, individually, and business
agent, and C. E. Dotson, business agent.     The bill sought an
injunction against the defendants to restrain them from boy-
cotting the business of the plaintiff.     It will be necessary to
state somewhat in detail the various averments of the bill so
that the precise questions involved may be more readily un-
derstood.

It is charged that the several organizations named as de-
fendants are unincorporated, and that they, together with the
individual defendants, and other members and officials of the
said organizations, are engaged in joint and concerted action
and design to accomplish the results which will be later set
forth.   It is charged that on the 25th of May, 1903, My
Maryland Lodge No. 186, at the instigation, and upon the
request of the Baltimore Federation of Labor, caused a de-
mand to be made upon the plaintiff for an increase of ten per
cent on the amount of wages which he was then paying to his
employees: That on the 16th of June following, a petition
was served upon the plaintiff, who is engaged in the manu-
facture of machinery, especially machinery used by the brew-
ing companies of Baltimore, signed by a number of his em-
ployees making a like demand for a ten per cent increase of
wages.    The petition, the plaintiff alleges, was signed by his
employees under duress and unwillingly at the instigation of
My Maryland Lodge No. 186: That about the 30th of June,

a committee of the same lodge called on the plaintiff and threatened that if their demand for an increase of wages was not complied with, his employees would be ordered to go on a strike next day. The bill further charges that the plaintiff refused to comply with these demands because the rate of wages he was then paying his employees was equal to seven per cent increase over the scale of wages which then existed in shops of like character in the city, but that he was ready and willing to grant an addition of three per cent increase which with the seven per cent just alluded to, would make a total of ten per cent: That on the 1st of July, all the machinists engaged by the plaintiff struck: That on the 15th of July, the employees of the plaintiff still being on a strike, a committee from The Baltimore Federation of Labor called upon the plaintiff to adjust the alleged difference between him and defendant organization, The International Association of Machinists. The plaintiff replied to the demand of said committee, that he had nothing to adjust, and thereupon he was threatened, that unless he acquiesced in the demands made, he would be placed on the unfair list, and published throughout the city, as unfair to union labor; and further, in combination with the other defendants, they would prevent any other person from accepting employment in the plaintiff's works, would close his shop, and injure and destroy his business. That about the 15th of August, the defendants in pursuance of the combination and conspiracy charged against them in the bill, proceeded to carry out their threats; and the bill then goes on to set forth various acts which it is alleged the defendants committed in furtherance of their plans and purposes to destroy the plaintiff's business. It is distinctly charged that they appointed and caused certain of their number and other persons unknown to the plaintiff, to picket the streets near and around his works, by means whereof the defendants kept up a constant espionage upon all the business of the plaintiff. That they have appointed and caused certain of their number, and others unknown to the plaintiff, to follow his wagons and workmen, and in this manner, discovered where work was

being done by him and for him, so that they could more completely harass him in carrying on his business by threatening his customers that unless the work the plaintiff was doing for them was stopped, the customer himself would ·be boycotted. The bill then goes on to give specific instances where work undertaken by the plaintiff was stopped because of the interference and the threats made by the defendants or some of them.    It is charged that the plaintiff erected for The Frank Steil Brewery a steam pasteurizing plant, in consequence of which circulars were printed and distributed by the Baltimore Federation of Labor boycotting the beer made at that brewery, solely because the machinery·was erected by the plaintiff. A copy of the circular filed with the bill is as follows: "Don't drink Frank Steil's beer, he has been declared unfair by the Baltimore Federation of Labor, for getting his machinery from the unfair firm of John B. Adt."    A similar circular was issued to induce persons not to buy ice from J. F. Wiessner of Highlandtown, " he has" says the circular, "been declared unfair by The Baltimore Federation of Labor, he gets work done by the unfair firm of J. B. Adt."    Other allegations follow with respect to work being 'done and materials being furnished by the plaintiff for other breweries, which it is averred discontinued their patronage because of threats of boycotting made by the defendants.    By the 13th paragraph of the bill it is charged that the defendants have notified all breweries and other manufacturing concerns that they must not have work done by the plaintiff, and that the instances above set forth are only a few cases were the defendants have illegally and wrongfully interfered with his business.    It is further charged that all of these illegal threats, published words and wrongful conduct, were spoken, published and done, and are being continued, in carrying out the lawless conspiracy, combination and design entered into by the defendants.    The bill alleges fur-·ther that by reason of the illegal and unlawful acts of the defendants the plaintiff is unable to fill contracts made by him, or to deliver materials manufactured by him, to his great and irreparable injury: That the defendants are ·persisting in and

continuing the said unlawful acts, and are using all their ability
to prevent the plaintiff from securing orders and thereby to
cause and compel him to close down his works, and to sus-
pend and discontinue his business.    Upon this and other alle-
gations an injunction was asked against the defendants to re-
strain them from interfering with the plaintiff's business.    The
Circuit Court passed an order directing an injunction to be
issued unless cause to the contrary were shown by a certain
date.    The defendants thereupon filed an answer denying in
detail every allegation of the bill, though admitting that Voll
mer had distributed the circulars individually and not in be-
half of the other defendants.    A replication was filed and the
plaintiff commenced to take testimony.    After testimony had
been taken for some days the plaintiff filed a petition reiter-
ating the averments of the bill of complaint, and charging
that the defendants were still engaged in the acts set forth in
the bill of complaint, and praying that an injunction might
issue during the pendency of the cause.    The petition asserts
that the plaintiff's business has dwindled from $18,000 a year
to less than $3,500 in consequence of the wrongful acts of the
defendants.    This petition was also answered, and its aver-
ments were denied.    Accompanying the petition were sundry
affidavits, which will be considered later on.    On the 11th
day of June, 1904, an order was signed directing the injunc-
tion to issue in the words following: "Ordered by the Circuit
Court of Baltimore City this 11th day of June, 1904, upon
the foregoing petition and affidavits, that a writ of injunction
be issued as prayed in said petition, upon the filing of a bond
by the plaintiff in the penalty of $5,000 with security to be
approved by the Clerk of this Court, the said writ to enjoin
the defendants in this case and each of them, their and each
of their agents, officers, members, representatives and confed-
erates from in any manner interfering with or hindering or at-
tempting directly or indirectly to interfere with the said plain-
tiff, John B. Adt, his agents, servants and employees in con-
ducting his said business by following his said delivery wagons
in the streets for the purpose of finding where work is to be

done; or from going to or sending any communication, letters or circulars to places of business or breweries or manufactories where the plaintiff has done work or is now doing work, or shall hereafter do work, for the purpose of inducing, persuading or compelling by threats, or intimidation in any other manner, the owner or owners of such places of business, breweries or manufactories, their agents, servants or employees to withhold or fail to give the complainant such work as they might otherwise give him or to compel him to stop any work ordered from or commenced by him; from publishing, printing, writing or circulating in any manner whatever any matter or thing that would tend to discredit in the eyes of the public, or to injure the business of any person for whom the plaintiff has done, is now doing, or will hereafter do work by reason of such work; from in any manner boycotting the said plaintiff or his manufactured goods or any one for whom the plaintiff has worked, is now working, or shall hereafter work, or manufactured articles of such last-named person by reason of such work; and from in any way menacing, hindering or obstructing the plaintiff by interfering with the business of customers in the full enjoyment of such patronage or business as he might possess independent of such interference." From this order the pending appeal was taken.

With the exceptions of the affidavits accompanying the petition, the evidence adduced below is not before us on this appeal. The testimony taken in the cause prior to the granting of the injunction is not contained in the record with which we are now dealing. If the averments of the bill are finally sustained by the evidence, it is clear we think that the plaintiff is entitled to the relief he seeks. In 8 *Cyc.*, p. 639, a boycott is thus defined : "This term ordinarily means the confederation, generally secret, by many persons whose intent is to injure another by preventing all persons from doing business with him through fear of incurring the displeasure, persecution and vengeance of the conspirators. The character of the agreement included in the term defined is highly unlawful, and is an indictable conspiracy." The Courts have generally con-

demned those combinations usually termed boycotts which are formed for the purpose of interfering, otherwise than by lawful competition, with the business affairs of others, and depriving them by means of threats and intimidations of the right to conduct the business in which they happen to be engaged according to the dictates of their own judgments. The right of an individual to carry on his business as he sees fit, and to use such implements or processes of manufacture as he desires to use, provided he follows a lawful avocation and conducts it in a lawful manner, is entitled to as much consideration as his other personal rights; and the law should afford protection against the efforts of powerful combinations to rob him of that right and coerce his will, by intimidating his customers and destroying his patronage. *Hopkins* v. *Oxley Stave Co.*, 28 C. C. A. 99; 8 *Cyc.* 640. It would serve no useful purpose to review the great number of cases that have been decided in England and this country, upon the subject now at issue.

The plaintiff was engaged in a lawful business, and was carrying it on in a lawful way. There is no pretense that he had done anything to any of the defendants which was either illegal, immoral or unjust. He was paying wages to his employees at a higher rate than wages paid by other establishments, and was willing to still further increase them so as to reach the ten per cent addition which the defendants demanded he should pay. The law protects him in his right to employ whom he pleases, at prices which he and his employees can agree upon, and he has the further right to discharge them at the expiration of their term of service, or for violation of their contract. This right must be conceded, or personal liberty is a delusion. On the other hand the employees have a perfect legal right to fix a price upon their labor, and to refuse to work unless that price is obtained. They have that right both as individuals, and in combination. They may organize to improve their condition, and to secure better wages. They may even use persuasion to have others join their organization. They have an unquestionable right to present their cause to the public in newspapers or circulars in a peaceable way, b

with no attempt at coercion. If ruin to the employer results from their peaceable assertion of these rights, it is a damage without remedy. But the law does not permit either employer or employee to use force, violence, threats of force or threats of violence, intimidation or coercion. As is very aptly stated by the Supreme Court of Connecticut in *State* v. *Glidden*, 55 Conn. 49, "it seems strange that in this day, and in this free country—a country in which law interferes so little with the liberty of the individual—it should be necessary to announce from the Bench that every man may carry on his business as he pleases, may do what he will with his own, so long as he does nothing unlawful and acts with due regard to the rights of others; and that the occasion for such an announcement should be, not an attempt by government to interfere with the rights of the citizen, nor by the rich and powerful to oppress the poor, but an attempt by a large body of workingmen to control by means little, if any better than force, the action of employers." *Glidden's case* was a criminal prosecution. The indictment charged that if the Carrington Publishing Company did not yield to the demands of the defendants with respect to discharging certain of its workmen and with respect to employing others, they, the defendants, and their associates would threaten all persons dealing with the corporation, and that they could and would so control, boycott and injure the business customers, and by stopping and preventing the patronage of others through threats and intimidations and by other unlawful means compel such customers, though against their will, to cease doing business with the subscribers and other patrons of the publishing company; and that the defendants would not give up or abandon those proceedings to injure the business of the company until they had either destroyed said business and prevented it from being carried on, or until the company should comply with their demands. In addition to the language we have just above quoted from the judgment of the Court, the opinion states: "If we look at this transaction as it appears on the face of this information we shall be satisfied that the defendants' purpose was to deprive the Carrington

Publishing Company of its liberty to carry on its business in its own way, although in doing so it interfered with no right of the defendants.    The motive was a selfish one—to gain an advantage unjustly, and at the expense of others, and therefore the act was legally corrupt.    As a means of accomplishing the purpose the parties intended to harm the Carrington Publishing Company, and therefore it was malicious."    A case strikingly like the one at bar in *Beck* v. *Ry. Teamsters Union*, 118 Mich. 497; s. c., 42 L. R. A. 407.    In the case which has last been alluded to, an injunction was issued to restrain a boycott, and the boycott circular was somewhat more elaborate but not more pointed than the one which we have quoted in full in an early part of this opinion.

It is too late to doubt the jurisdiction of a Court of equity, to grant relief in such cases as this, if the averments of the bill are sustained by the evidence.    The adjudged cases seem to be all one way.    *Thomas* v. *Cin. N. O. & T. P. R. Co.*, 62 Fed. Rep. 803; *Vegelahn* v. *Gunter*, 167 Mass. 92; s. c., 35 L. R. A. 722; *Toledo A. A. & N. M. R. Co.* v. *Penna. Co.*, 54 Fed. Rep. 730; s. c., 19 L. R. A. 387; *Arthur* v. *Oakes*, 11 C. C. A. 209; s. c., 25 L. R. A. 414; *Barr* v. *Essex Trade Council*, 35 N. J. Eq. 101; s. c. 30 Atl. Rep. 881; *Sherry* v. *Perkins*, 147 Mass. 212; *Boutwell* v. *Marr*, 71 Vt. 1; s. c. 43 L. R. A. 803; *Casey* v. *Cin. Typ. Union*, 45 Fed. Rep. 135; s. c., 12 L. R. A. 193; *Note IV Passaic P. Works* v. *Ely, &c., Co.*, 62 L. R. A. 694.    This list of cases might be swelled a hundred fold; but we do not deem it necessary to cite any others.    Those that we have referred to are quite analogous to the one now before us.

In *Casey* v. *Cincinnati Typographical Union*, 12 L. R. A. 193, there was an attempt to compel the plaintiff, the proprietor and publisher of a daily and weekly newspaper, to unionize his establishment.    No violence or threats of violence were used, and the Court says it was an organized conspiracy to force the plaintiff to yield his right to select his own workmen, and submit himself to the control of the union, and to allow it to regulate prices for him, and to determine whom

he should employ and whom he should discharge.   In other words, it was an organized effort to force printers to come into the union or be driven from their calling for want of employment, and to make the destruction of the plaintiff's business the penalty for his refusing to surrender to the union.   Whatever moral obligation may have been incurred by the plaintiff by reason of his promises to unionize his office, they were wholly without consideration.   "No case has been cited where upon a proper showing of facts an unsuccessful appeal has been made to a Court of Chancery to restrain a boycott. The authorities are all the other way.   At common law an agreement to control the will of employers by improper molestation was an illegal conspiracy."

The jurisdiction of a Court of equity to grant the relief prayed for being unquestioned, and the acts complained of in the bill constituting, if true, a conspiracy to ruin the plaintiff's business by methods which the law can neither tolerate nor sanction; the question that is left for determination is, whether the preliminary injunction should have been granted, or should be continued until final hearing.   It is objected that it should not have been issued because first, the affidavit verifying the allegations of the petition was made by a person other than the plaintiff himself, and the cases of *Fowble* v. *Kemp*, 92 Md. 630; *Moffat* v. *Calvert Co.*, 97 Md. 266, and *Bowie* v. *Smith*, 97 Md. 326, are relied on to support this contention.   And, secondly, because the acts complained of are not wrongful or illegal.   But the case at bar differs from each of those just alluded to.   Here the affidavit was made by the general manager of the plaintiff's business and explicitly stated, "that the matters and things set forth in the foregoing petition are within his knowledge, and are true as therein stated."   That was precisely what the affidavit in the *Fowble and Kemp case* omitted. We said in that case if the affidavit had stated that the facts alleged were within the personal knowledge of the affiant that would have been sufficient.

With respect to all of the defendants except Vollmer, we are at a loss to perceive how the continuance of the injunction

until final hearing can work any serious inconvenience, because they have all disclaimed participating in the acts charged against them, and if they are restrained from doing that which they have not done, and do not intend to do, they have no ground of complaint, at least during the pendency of the proceedings and until the final hearing is reached.   Upon the hearing of a motion for a preliminary injunction, the rules of evidence are applied less strictly than upon the final hearing of the cause, and consequently evidence that would not be competent in support of an application for a perpetual injunction may be admitted.   *Casey* v. *Cin. Typ. Union, supra.*   The acts charged do not constitute a lawful competition in trade. They are distinctly unlawful, if true; and the cases we have cited fit with precision the facts alleged in the bill.   The things which the order of the Court restrained the defendants from doing are wrongful, and can under no conditions be treated as legitimate competition.   They were designed to ruin the plaintiff's business and they have well nigh succeeded, if the statement contained in the petition is accurate.

There is sufficient disclosed in the affidavits accompanying the petition, notwithstanding the denials contained in the answer, to justify the continuance of the injunction until final hearing.   For example we append the affidavit of Frederick F. Heinz : "That he is the salesman of the house of John B. Adt, manufacturers of machinery and dealers in machine supplies; that on July 1st, 1903, the machinists employed by John B. Adt went on a strike; that since that time most of the striking machinists have returned to the employ of John B. Adt; ever since the said 1st day of July and down to the present date this deponent knows from statements made to him by former and present customers of the firm of John B. Adt that a boycott has been declared by organized labor of this city against John B. Adt and also against anyone who employs John B. Adt to do work for them.   Deponent visits in the course of his employment, all the breweries of this city on an. average of about once a week, the house of John B. Adt formerly having made a specialty of brewing machinery and sup-

plies, that since the 19th day of April, deponent has been informed by the manager or engineer of the Darley Park Brewery, the John F. Weisner Sons Brewing Co., the National Brewery, the Fred. Bauernschmidt and American Brewery, the George Bauernschmidt Brewery, the Bay View Brewery and of the Globe Brewery, and also by the manager of the Baltimore Cooperage Company and the engineer of the R. M. Jones & Co., that they and each of them had work that they would be glad to have performed by the house of John B. Adt, but that they were afraid to let him do it for fear of being put upon the unfair list of the Baltimore Federation of Labor and boycotted, that since April 29th, 1904 (the date of the filing of the bill in this case), deponent has been informed by Mr. Albert Stengel, engineer of the Standard Brewery, that the Standard Brewery had been put on the unfair list of the Baltimore Federation of Labor and ordered to be boycotted because it had had work done by John B. Adt; that on May 18th, 1904, deponent was at C. Kohman & Sons butchering establishment and was there given by James Townsend, the engineer, the boycott dodger and the official list of fair and unfair firms which are annexed hereto and prayed to be taken as part hereof, which Townsend stated had been left with him that day by a business agent of one of the unions, deponent knows from what has been told him by the representatives of firms that have been customers of John B. Adt in the past and who are not buying anything from him now, that John B. Adt would sell to these firms an average of $200 per month in supplies alone were it not that these customers have been informed by officials of organized labor that John B. Adt is on the un-fair list and under a boycott, and any firm dealing with him will itself be put upon the unfair list and boycotted." And the affidavit of J. Henry Thomas is as follows: "I hereby certify that on this 25th day of May, 1904, before me, the subscriber, a Notary Public, of the State of Maryland, in and for the city of Baltimore personally appeared J. Henry Thomas, president of the Standard Brewery Company, and made oath in due form of law that the company of which he is president had boycott

circulars distributed against it within the last few weeks, a copy of which circular is attached hereto as part of this affidavit, that by reason of this circular he is afraid to give work to John B. Adt, because the said firm of John B. Adt is on the unfair list of the Baltimore Federation of Labor, and as a condition to the withdrawal of the boycott against the Standard Brewery Company, this affiant's brewery was compelled to sign an agreement dated May 14th, 1904, agreeing to employ only union men in good standing in the several labor organizations of the Baltimore Federation of Labor." The circular above alluded to is in these words :

<blockquote>
To all Union Men

and their friends

Do not forget the Standard Brewery

is having its machinery repaired by

Non-Union Machinists

From John B. Adt's Machine Shop

Other Breweries Employ strictly

Union Men

You Know What To Do.
</blockquote>

There are other affidavits which need not be quoted. They are along the same lines as those just transcribed.

It may be that when the final hearing is reached, it will be apparent from the evidence that the defendants have been guilty of none of the acts with which they stand charged by the bill. In that event of course the bill will be dismissed as to those who are not implicated. Upon a review of the whole case as presented by the partial record before us, we think that the ends of justice would best be promoted by affirming the order of the Court below and by remanding the case that it

may proceed in due and regular course to a final hearing on the merits.

> *Order affirmed and cause remanded,*
> *the costs above and below to be paid*
> *by the appellants.*

(Decided January 12th, 1905.)