CHARLES W. BLANDFORD ET AL. *vs.* WILLIAM K. DUTHIE ET AL.

---

WILLIAM K. DUTHIE *vs.* CHARLES W. BLANDFORD ET AL.

*Appeal in Equity—Order Overruling Demurrer—Injunction—Boycott by Trades Union—Breach of Contract.*

Defendants are not bound to appeal from an order overruling a demurrer to a bill for an injunction and, without having done so, may appeal from a final decree making a temporary injunction against them perpetual.          p. 402

Members of trades unions, who seek to compel a firm to consent to employ only members of the unions, by threatening to boycott contractors with whom the firm is doing business, and to call strikes of the contractors' employees, unless such con-

tractors cease to do business with the firm, and rescind existing contracts therewith, may properly be enjoined from such illegal interference with the firm's business.                    pp. 402-406

An injunction against the breach of a contract for the purchase of building materials from plaintiff was properly refused, there being no allegation of irreparable injury, and the remedy at law appearing to be complete and adequate.                    p. 406

*Decided February 12th, 1925.*

Appeals from the Circuit Court No. 2 of Baltimore City (DAWKINS, J.).

Bill by Charles W. Blandford and William G. Blandford, co-partners trading as Vaile & Young, against William K. Duthie, the Benjamin F. Bennett Building Company, and others. From a decree for a perpetual injunction against all the defendants other than the said building company, they appeal. And from an order sustaining a demurrer of the said building company and from an order refusing a rehearing as to said company, plaintiffs appeal. Decree and orders affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, and WALSH, JJ.

*Meyer Rosenbush* and *Joseph Bernstein,* for Charles W. Blandford and William G. Blandford.

*Robert F. Leach, Jr.,* with whom were *Curran & Leach* on the brief, for William K. Duthie and others.

*George Moore Brady,* submitting on brief, for the Benjamin F. Bennett Company.

ADKINS, J., delivered the opinion of the Court.

The bill of complaint in this case, from decrees in which these appeals were taken, was filed by Charles W. Blandford and William G. Blandford, trading as Vaile & Young,

against William K. Duthie and others, individually and as a voluntary, unincorporated association, doing business as, and trading under the name of, Allied Building Trades Council of Baltimore, and certain other local unions and their representatives, and the Benjamin F. Bennett Building Company, a body corporate. The bill sought an injunction against the defendants, other than the Bennett Company, to restrain them from boycotting the business of the plaintiffs.

It alleges that the defendants, other than the Bennett Company, are all members of certain trades unions in Baltimore City, each of said unions being composed of a large number of men whose names and addresses, except those mentioned, are unknown to plaintiffs, and all of said unions being voluntary unincorporated associations bonded together for the purposes of their respective trades or businesses, and each having elected delegates or members to serve as members of the defendant, the Allied Building Trades Council of Baltimore; that the object and purpose of the formation of said council is to compel, by whatever means may be necessary, the unionizing of the shops and businesses of the various industries in Baltimore City; that the defendant Edward D. Bieritz has for many years been known as the principal spokesman for said council; that the business of plaintiffs (sheet metal roofing) is almost entirely connected with the building trades, and about eighty per cent. of it is done with building contractors; that its reputation has been built up during the forty years of its existence, during which time they have been invited to bid on the roofing work of a large portion of the building operations in Baltimore, by owners, architects and general contractors; that for many years plaintiffs have been doing business with, and have been employed by, the said Bennett Company and its predecessors; that in the fall of 1923 said Bennett Company secured the contract for the alterations and improvements to be made by Hutzler Brothers on North Howard Street in said city, and plaintiffs being the lowest bidders were awarded by said Bennett Company contracts for the metal roofing work in connection there-

with amounting to $11,485, and proceeded to assemble the
material and begin the manufacture in their shops of so much
of the work embraced in their contracts as could be done
there; that for twelve years plaintiffs have conducted an open
shop, and have employed their men without regard to their
labor affiliations, and have always paid wages equal to and in
most instances greater than those prescribed by labor unions
for like work; that they employ fifty men, thirty-five of
whom are skilled workmen, some of whom have been in their
employ for over thirty years, a number for ten or fifteen
years, and none less than four years, all of whom have been
satisfied with their wages and working conditions; that
numerous attempts have been made by members of labor
unions to persuade said employees to become members of
unions, without success, although plaintiffs interposed no
objections; that in a number of instances plaintiffs have
failed to get contracts where they were the lowest bidders
and are convinced that this was due to threats and intimida-
tions made by defendants against those having authority to
award contracts; that in April, 1924, a number of said de-
fendants, to wit: the said Bieritz, John L. Lawless, Long,
and Duthie visited plaintiffs' place of business as represen-
tatives of the said council, Bieritz explaining to plaintiffs the
advantages of organizing their shop, and stating that the
council had the sympathy of the builders; that Bieritz said
that plaintiffs' shop did not need organization, but it was
necessary because of the effect upon others in a similar line of
business; that he further stated that there were a number of
instances where he had been able to get in touch with con-
tractors before they awarded the jobs and that he had pre-
vented said contractors from awarding the jobs to plaintiffs;
and in other instances where jobs were awarded to them he
had gotten the promise of the contractors not to give plain-
tiffs any work in the future; that another representative said
"there were many ways whereby your workman could be
handicapped and annoyed while at work on building"; that
at the close of the interview Bieritz said: "Now, Mr. Bland-

ford, you have to admit that in your case we have been very patient; Mr. Baker and I have made several attempts to convince you of the advisability of closing your shop; the time has arrived when definite action has to be taken"; that plaintiffs took all this to mean that it was the intention of defendants, in the event plaintiffs did not unionize their shops, to do everything in their power to prevent them from getting business from people with whom they are now and have been doing business for a long time, and from completing contracts already secured; that the following correspondence took place between plaintiffs and the Bennett Company, viz.:

> "Baltimore, Md., April 26th, 1924.
> "Benjamin F. Bennett Building Company,
>     "123 S. Howard Street,
>         "Baltimore, Md.
>
> "Gentlemen:
>
> "On Thursday, April 24th, 1924, your Mr. B. Frank Bennett verbally requested the writer that our firm discontinue shop work upon the material required to complete the following contracts we have with you on the Hutzler job:
>
> "Your letter January 30th, 1924. Our acceptance Feb. 4, 1924.
>
> "Our letter March 29th, 1924. Your acceptance April 5, 1924.
>
> "Our letter April 3rd, 1924. Your letter April 9th, 1924.
>
> "We have given this request careful consideration, and we have concluded that our contractual obligations with you, and the business reputation of this firm covering a period of approximately forty years, compel us to require you to put this request, and the reasons which prompt you to rescind contracts made with you in good faith, in writing. Upon receipt of such a letter, we will promptly write you our final determination in this connection.
>
> > "Very truly yours,
> > > "Vaile & Young."

"Baltimore, Md., April 28th, 1924.

"Re: Hutzler Brothers Buildings.

"Vaile & Young,

"Bush and Ridgely Streets,

"Baltimore, Maryland.

"Gentlemen:

"We acknowledge receipt of your letter of April 26th, requesting that we confirm to you in writing our verbal instructions to discontinue shop work now being done under your contract with us on the Hutzler Brothers Buildings.

"The reason for this order has to do with the demands of the Building Trades Council of Baltimore. This Council is composed of all the unions allied with the building trades except the carpenters and bricklayers.

"During the latter part of March, the representatives of this Council called upon us and advised us that they would not permit any of their members to work on this building with non-union men. They made special reference to Vaile & Young.

"We refused to consider their demands. On account of this refusal, a strike was called on the building on April 10th, which lasted until April 25th.

"Through the efforts of our client, Mr. Hutzler, a conference was called between the Council representatives and our firm on April 24th. The result of this conference was an agreement as follows:

"1. Work to be resumed by the striking union men on the following day.

"2. Work to be temporarily stopped in your shop pending your decision as to whether you will close your shop.

"3. If you decide not to close your shop, your contract to be rescinded by us, and awarded to some firm employing union labor.

"In accordance therewith, we are hereby requesting that you suspend all work now being done under your contract, pending your decision on the matter of closing your shop to only union employees. As soon as you have made this decision, kindly advise us.

"In making this request, may we assure you of our regret that the present conditions governing labor made it impossible for us to take any other course than this. We are firm in the belief that to have resisted the demands of the unions any longer would not have accomplished a solution to your problem. Our contract was made with you in good faith also, and this action implies no lack of our confidence in your firm, whatever. We are simply the victim of circumstances over which we have no control.

"Yours very truly,
"Benjamin F. Bennett Building Company.
"(Sgd.)   B. Frank Bennett."

That in January, 1924, plaintiffs were awarded contracts amounting to $15,400 by the M. A. Long Company of Baltimore, a general contracting firm, in connection with a building about to be erected by said company for the Johns Hopkins University; that by reason of the refusal of plaintiffs to unionize their shop and conduct the same as a "closed shop" all of the defendants, except the Bennett Company, have entered into a combination and conspiracy to unlawfully coerce and threaten various persons, firms and corporations with whom plaintiffs are doing business, and have been doing business for a long time, and particularly the Bennett Company and the M. A. Long Company not only to refuse to make new contracts with plaintiffs, but to violate contracts already made," that defendants proceeded to carry out said unlawful combination and conspiracy by calling upon practically all of the persons, firms and corporations engaged in the general contracting business in Baltimore City, and persons, firms and corporations desiring to build new buildings and improve old ones, with whom plaintiffs had been doing business and threatening to call strikes of all union men employed upon buildings upon which such contractors and such persons, firms and corporations were doing work, in the event they should enter into any contractual relation with plaintiffs, or employed therein to work upon any buildings, no matter where located, including buildings upon which

plaintiffs are not working and have no contracts to do any work; that by reason thereof, and by reason of threats of boycotts, the said Bennett Company and the said M. A. Long Company and said other firms and corporations, have been coerced and intimidated to such an extent that they have refused to make any new contracts with plaintiffs, and have cancelled or are about to cancel contracts already made; that the question involved is not one of mere dollars, but is a matter of the life or death of the business and business career of plaintiffs for the loss of which no damages will compensate; and that they are being utterly destroyed by the unlawful acts of defendants and unless they and each of them, except said Bennett Company, are restrained, said coercion and intimidation will continue and result in the ruin of said business and compel the discontinuance thereof, and by reason thereof plaintiffs will suffer great and irreparable injury and damage.

There are filed as exhibits, with the bills, the contracts with the Bennett Company and with the M. A. Long Company, the correspondence with the Bennett Company, and the following letter and deposition:

"Baltimore, Md., April 23,.1924.
"Re: School of Hygiene.
"M. A. Long Company,
    "Horn Building,
        "Baltimore, Md.

"Gentlemen:

"We acknowledge receipt of your letter of April 22nd, 1924, which reads as follows:

"'We are advised today that the structural steel workers have returned to work on the Hutzler Building. Therefore the cause of complaint of the Allied Building Trades Council being the same against the Hygiene Building as against the Hutzler job, it is our understanding that you can resume work on this building at once.

"'The building foundations are ready for you to proceed with your underground work, and we would thank you to start on the same as soon as possible.

" 'Please advise us immediately if there is any reason why you cannot start.'

"We communicated with the representative of the Building Trades Council and are informed that we cannot proceed with the work outlined above, until you have made a satisfactory settlement.

"The reason given by the Allied Building Trades Council for the structural steel workers having returned to work at the Hutzler Bros. Building is that they (structural steel workers) have chosen to ignore the Allied Building Trades Council.

"We are very anxious to go on with our work, and note in your paragraph regarding building foundations being ready for us to proceed with our underground work. We cannot, however, proceed under the present conditions, until we are so permitted by the Union.

"Very truly yours,

"James McCrea & Son,<br>"By Lester W. McCrea."

"State of Maryland, City of Baltimore, to wit:

"I hereby certify that on this 1st day of May, 1924, before me, the subscriber, a notary public of the State of Maryland, in and for the City of Baltimore aforesaid, personally appeared M. A. Long, President of the M. A. Long Company, and deposes and says:

"That he is President of the M. A. Long Company.

"That said company is engaged in the general contracting business in the City of Baltimore, State of Maryland, and elsewhere.

"That in the course of their business, they are required to sub-contract a great deal of the work which they contract to do. That among such sub-contractors with whom said company is, and has been doing business since its incorporation, September, 1919, is the firm of Vaile & Young, of the City of Baltimore, State of Maryland, who are engaged in the sheet metal and roofing business.

"That the business relations of the M. A. Long Company with said firm of Vaile & Young have been satisfactory, and the work done by the said Vaile & Young satisfactory both to said M. A. Long Company and those by whom said company are employed.

"That on or about the 10th day of January, 1924, this deponent, on behalf of his company, secured a contract with the Trustees of the Johns Hopkins University for the construction of a structure known as the 'School of Hygiene' to be located at the corner of Wolfe and Monument Streets, in the City of Baltimore, State of Maryland, and that certain sheet metal work was required in the doing of said work. That deponent, on behalf of said company, received estimates for that portion of the work required in and about said building, and the said Vaile & Young, being the lowest bidders for doing said work, with the consent of their employers, the said Trustees of the Johns Hopkins University, and the architects, Messrs. Archer & Allen, the contract for the doing of such sheet metal work was awarded to said Vaile & Young, amounting to $15,400.00, on the 31st day of January, 1924.

"That on or about the 26th day of April, in the year 1924, this deponent was visited at his office in the City of Baltimore, State of Maryland, corner Guilford Avenue and Fayette Street, by a number of gentlemen representing themselves as the Building Trades Council of Baltimore. Those whose names this deponent recollects are as follows: Edward D. Bieritz, Thomas P. O'Rourke, John L. Lawless, a Mr. Duffy, a Mr. Long, and a Mr. Hoff.

"There were others whose names this deponent does not recall at this time.

"Deponent was informed by said committee that Vaile & Young would not be allowed to work on the School of Hygiene unless deponent was able to compel them to unionize their shop, and that if deponent was not able to get this agreement from them, it would be necessary for deponent to cancel the Vaile & Young contract, in order to get the members of the

Building Trades Council to work on this job. Deponent's explanation to them was that this contract was cost plus fixed fee. That the architects and deponent jointly with the building committee of the trustees were using their efforts to keep the cost as low as they consistently could, and sub-contracts were not awarded by deponent until they had been submitted to the architects, and deponent had procured the approval of the trustees. Therefore deponent was not in a position to take a stand on the Vaile & Young contract, because the trustees and the architects were also parties to the contract, and as they had chosen Vaile & Young, deponent would have to procure their permission to make any deviation in the contract, and that up to the present time deponent had not received permission or instructions from the architects or the trustees to take any such steps.

"Mr. Bierritz then informed deponent, while they had no desire to tie up deponent's work, they would not allow any trades allied with the Building Trades Council to work on the School of Hygiene until deponent had complied with their demands with reference to the firm of Vaile & Young, to wit: either having them unionize their shop or have deponent's company cancel its contract with Vaile & Young.

"The work contracted for by Vaile & Young to be done on the School of Hygiene above mentioned could not be done by them for a period of approximately three months or more, because the building will not be ready for the character of work that they are to do until that time. Neither the firm of Vaile & Young or any of their employees have as yet been on the job of the School of Hygiene, nor will it be necessary for them to be on that job to do any work there for a period of at least three months from date.

"(Signed)   M. A. Long."

"Subscribed and sworn to before me this first day of May, 1924. As witness my hand and notarial seal.

"Marie McC. Cathcart,

"(Seal)                    Notary Public."

The prayer of the bill is:

"To the End Therefore:

"1. That by an order of this Honorable Court, a preliminary injunction be issued, enjoining and restraining the aforesaid defendants, and each of them (save and except the defendant, the Benjamin F. Bennett Building Company), their agents, servants, officers, members, representatives, business agents and confederates, from in any manner making any threats or doing any acts whatsoever which would in any manner tend to coerce or intimidate any persons, firms, or corporations to interfere with, or hinder, or attempt, directly or indirectly, to interfere with your orators, their agents, servants and employees, in conducting their business aforesaid, and from interfering with, or hindering, or attempting, directly or indirectly, to interfere with your orators securing contracts with those who desire to make contracts with your orators, and from interfering with, or attempting, either directly or indirectly, to interfere with or prevent performance of contracts by your orators, and from making any threats or doing any acts whatsoever which would, either directly or indirectly, tend to coerce or intimidate any person, firm or corporation doing business with your orators, or contemplating making contracts with your orators, and by reason thereof cause such person, firm or corporation to refuse to continue to do business with your orators, or cause such person, firm or corporation to refuse to make contracts with your orators, and from visiting the places of business of any such person, firm or corporation for the purposes aforesaid, and from doing any act, matter or thing whatsoever, directly or indirectly, which would make any such person, firm or corporation believe they, or any of them, will or would be injured in their own business, unless they or any of them refuse to do business with your orators, or unless they or any of them, cancel their existing contracts with your orators.

"2. That by an order of this Honorable Court, a permanent injunction be issued, perpetually enjoin-

ing and restraining the aforesaid defendants, and each
of them (save and except the defendant, the Benjamin F. Bennett Building Company), their agents,
servants, officers, members, representatives, business
agents and confederates, from in any manner making
any threats or doing any acts whatsoever which would
in any manner tend to coerce or interfere with, or
hinder, or attempt, directly or indirectly, to interfere with your orators, their agents, servants and employees, in conducting their business aforesaid, and
from interfering with, or hindering, or attempting,
directly or indirectly, to interfere with your orators
securing contracts with those who desire to make contracts with your orators, and from interfering with,
or attempting, either directly or indirectly, to interfere with or prevent performance of contracts by
your orators, and from making any threats or doing
any acts whatsoever which would, either directly or
indirectly, tend to coerce or intimidate any person,
firm or corporation doing business with your orators,
or contemplating making contracts with your orators,
and by reason thereof cause such person, firm or corporation to refuse to continue to do business with
your orators, or cause such person, firm or corporation to refuse to make contracts with your orators,
and from visiting the places of business of any such
person, firm or corporation for the purposes aforesaid, and from doing any act, matter or thing whatsoever, directly or indirectly, which would make any
such person, firm or corporation believe they, or any
of them, will or would be injured in their own business, unless they, or any of them, refuse to do business with your orators, or unless they, or any of
them, cancel their existing contracts with your orators.

"3.  And for such other and further relief as the
nature of their case may require."

A preliminary injunction was granted as prayed in the
bill on May 3rd, 1924, and the injunction issued on the same
day. On May 13, 1924, plaintiffs filed a petition calling

attention to their omission in the bill to ask for an injunction against the Bennett Company, and praying that a preliminary injunction be also granted against said company. This was done by an order of the same date and the injunction was on that date issued against said company.

The Bennett Company, on May 17th, 1924, filed an answer, and on May 22nd, 1924, the other defendants, with one exception, in addition to the Bennett Company, filed a general demurrer to the bill, setting out the grounds of the demurrer.

On June 3rd, 1924, the chancellor filed his opinion in which he said he would overrule the demurrer; but that he would have sustained it as to the Bennett Company if it had not already answered.

Whereupon, on June 10th, 1924, the said company asked leave to withdraw its answer and to file a demurrer, which was done on leave granted.

On June 16th, 1924, the court passed an order overruling the demurrer of all the defendants except the Bennett Company, with leave to said defendants to answer within fifteen days; and sustaining the demurrer of the Bennett Company and rescinding the order for the preliminary injunction as to said company; with leave to complainants to answer within fifteen days. On the same day plaintiffs filed a petition in which they stated that at the time of the argument of this case there had been no actual break of their contract by the Bennett Company; that late on the afternoon of the day the court's order was passed, plaintiffs received a letter from the Bennett Company definitely notifying plaintiffs that unless they notified said company within two days that they would do the work, using only union labor "you may consider your contract with us null and void"; that plaintiffs had no intention of acceding to this condition and therefore the contract was broken by said company. The petition prayed for a rehearing and a rescission of the order sustaining said company's demurrer. This was refused by an order of July 1st, 1924, and on July 17th, 1924, no answer having been filed by the defendants whose demurrer was overruled, a decree

was signed and filed making the preliminary injunction against said defendants perpetual.

The appeal in No. 75 is from that decree, and was entered on August 26th, 1924. The appeal in No. 60 is from the order sustaining the demurrer of the Bennett Company and from the order overruling the motion for a re-hearing. The appeals were heard together.

In No. 75 a motion has been filed to dismiss the appeal on the ground that it was not taken within two months from June 16th, 1924. But the appeal was not from that order. The appellants could have appealed from that order, but they were not bound to do so. As a matter of fact the order of July 17th, 1924, was the final order, and from that order this appeal was properly taken. The motion to dismiss is overruled.

In our opinion this case is ruled, so far as the appeal in No. 75 is concerned, by *Lucke v. Cothing Cutters & Trimmers' Association,* 77 Md. 396, and *My Maryland Lodge v. Adt,* 100 Md. 238.

It is true, as urged by appellants, that there were some prominent facts in these cases, which are not alleged to have existed in the present case; but we do not agree with the suggestion that those were the controlling facts or that they were necessary to the decisions.

In the *Lucke* case, *supra,* the plaintiff was discharged from his position as a cutter in a clothing establishment at the instance of the clothing cutters union, which was a branch of the knights of labor, and the demand was made because plaintiff was not a member of the union. The fact in that case which appellants insist distinguishes it in principle from the present case, is that plaintiff endeavored to become a member of the union, and was turned down without cause other than an excess of members then out of employment. It is true the court mentioned this fact among others, and it is apparent that it especially was in the mind of the court in considering the question of malice. But the court said: "It is not necessary that such interference should have been malicious in its character. If it be wrongful, it is equally to

be condemned, and just as much in violation of legal right."
In speaking of the provisions of law authorizing the creation
of the appellee corporation, "to promote the well being of
their every day life, and for mutual assistance in securing
the most favorable conditions for the labor of their members
and as beneficial societies," the court said: "But when the
State granted its generous sanction to the formation of cor-
porations of the character of the appellee, it certainly did
not mean that such promotion was to be secured by making
war upon the non-union laboring men, or by any illegal inter-
ference with his rights and privileges." The plaintiff's right
to sue for damages was upheld. There was no violence used
or threatened. The implied threat was to induce members
of the union to withhold their patronage if plaintiff was not
discharged, and possibly to call a strike.

In *My Maryland Lodge v. Adt, supra,* in which an in-
junction was granted and to which the present case is more
analogous in its facts, there were allegations of picketing the
streets near plaintiff's works and of following plaintiff's
wagons for the purpose of espionage upon plaintiff's business
and finding out who were his customers, so that defendants
could more completely harass him in carrying on his busi-
ness by threatening his customers that unless the work the
plaintiff was doing for them was stopped, the customer him-
self would be boycotted; but the picketing was apparently not
accompanied with violence of any sort; at any rate no stress
is laid upon this charge by the court. In other respects the
acts charged are of essentially the same character and had
the same end in view, as those charged in this case, viz: to
compel plaintiff to yield to the unlawful demands of defend-
ants by boycotting or threatening to boycott plaintiff's cus-
tomers if they continued to do business with him. It was to
acts of this character and not to any acts of violence that the
court chiefly referred, as will appear from affidavits which
were quoted in full in the opinion, and from the citations
from other cases where it was expressly stated there was no
violence or threats of violence. For instance the court says:
"In *Casey v. Cincinnati Typographical Union,* 12 L. R. A.

193, there was an attempt to compel the plaintiff, the proprietor and publisher of a daily and weekly newspaper, to unionize his establishment; no violence or threats of violence were used, and the court says it was an organized conspiracy to force the plaintiff to yield his right to select his own workmen, and submit himself to the control of the union, and to allow it to regulate prices for him, and to determine whom he should employ and whom he should discharge. In other words, it was an organized effort to force printers to come into the union or be driven from their calling for want of employment, and to make the destruction of the plaintiff's business the penalty for his refusing to surrender to the union."

It was the same sort of organized effort in the present case and for the same unlawful purpose. Again adopting the language of Chief Judge McSherry in the *Adt* case, "the plaintiff was engaged in a lawful business, and was carrying it on in a lawful way. There is no pretense that he had done anything to any of the defendants which was either illegal, immoral or unjust. He was paying wages to his employees at a higher rate than wages paid by other establishments. * * * The law protects him in his right to employ whom he pleases, at prices which he and his employees can agree upon. * * * This right must be conceded, or personal liberty is a delusion."

We do not find any merit in the contention of appellants that this was simply a case of union men exercising their right to refuse to work on a job on which non-union men were employed.

There is nothing in the record to show that the employees of the Bennett Company objected to working on the job. What happened, according to the letter of this company filed as an exhibit, was that representatives of the Allied Building Trades Council advised the company "that they would not permit any of their members to work on this building with non-union men. They made special reference to Vaile & Young." On the refusal of the company to consider their demands, a strike was ordered. A settlement was made

between representatives of the council (not employees of the company) and the company, by which work was resumed on the promise of the company to rescind its contract with plaintiffs unless they agreed to comply with the demands of the council that they run a "closed shop."

In calling this strike and in the exaction it made as a condition of settlement the council violated the law because:

1.   There was no dispute between the company and its employees, and

2.   There was a contract between the company and plaintiff, with which there was no justification for interference by the council.

According to the overwhelming weight of authority it was unlawful for the council to call a strike in these circumstances.   Neither of these conditions were present in the *Adt* case, *supra*, and for that reason the present case is much stronger for the plaintiff.

In addition the defendants violated the law in enforcing a secondary boycott.

On all these points many cases might be cited.   It will be sufficient to mention a few:  *Lumley v. Gye,* 2 El. & Bl. 216; *Auburn Draying Company v. Wardell et al.,* 227 N. Y. 1, 6 A. L. R. 909, and cases cited in note; *American Federation of Labor v. Buck's Stove and Range Co.,* 33 App. Dist. Col. 83, 32 L. R. A. (N. S.) 748, and cases in note; *New England Cement Gun Co. v. McGivern,* 218 Mass. 198, L. R. A. 1916C. 986, and cases in note; *Hitchman Coal Co. v. Mitchell,* 245 U. S. 229; *A. R. Barnes & Co. v. Chicago Typographical Union,* 232 Ill. 424, and cases cited; *Curran v. Galen,* 152 N. Y. 33; *Anderson & Lind Mfg. Co. v. Carpenters' Dist. Council,* 308 Ill, 488; *Moore Drop Forging Co. v. McCarthy,* 243 Mass. 554; *United Shoe Machinery Co. v. Fitzgerald,* 237 Mass. 537; and cases cited in *My Maryland Lodge v. Adt, supra.*

It is contended by appellants that there is nothing in the bill, exhibits or deposition about "unfair" list or "boycotting" or threatening to boycott, in reference to contractors dealing with plaintiff.   But the instances of the Bennett

Company and the M. A. Long Company would be sufficient standing alone. With these concrete cases given, it cannot be said that the allegations are fatally lacking in definiteness. And finally the form of the injunction is challenged for want of certainty and definiteness.

It might be much improved by the omission of needless words, but it follows closely the prayer of the bill, and we are satisfied the defendants will have no difficulty in understanding what it means. It does not differ greatly in substance from the injunction ordered in the *Adt* case, *supra,* and in other cases of this character. It would be manifestly impossible to describe every act which would constitute boycotting or unlawfully interfering with plaintiffs' business.

There was no error in overruling the demurrer and granting the injunction and making the same perpetual in No. 75.

We find no error in the rulings appealed from in No. 60.

Apart from other reasons that might be given, there is no allegation in the bill of irreparable injury from the breach of contract by the Bennett Company, or of insolvency. So far as that defendant is concerned it seems to be a simple case of breach of contract for which an action for damages would lie. The remedy at law appears to be complete and adequate.

> *In No. 60, orders affirmed, with costs to appellees.*
> *In No. 75, decree affirmed, with costs to appellees.*

WALSH, J., filed the following separate opinion:

I concur in the opinion in No. 60.

I concur with the result reached by the Court in No. 75, because, in my opinion, the action of the appellants in threatening to cease working for the Bennett Construction Company if that company employed the appellees on any building, even though the appellants were not working on that particular building, was, under the circumstances in this case, illegal, but I am unable to concur with much of the other reasoning in the Court's opinion.